IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EDWARD E. ROBERSON, #R60232, <br><br> Plaintiff, <br><br> v. <br><br> C/O FENTI, <br> SGT. SUSLER, <br> SGT. JONES, <br> JOHN DOE 1, *correctional officer,* <br> JOHN DOE 2, *correctional officer,* <br> JOHN DOE 3, *correctional officer,* and <br> JOHN DOE 4, *correctional officer*, [1] <br><br> Defendants. | Case No. 20-cv-01296-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Edward Roberson, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center ("Menard"), brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. He claims that he was subjected to cruel and unusual punishment when he was attacked by an unknown inmate who was forced into his cell by correctional officers. He seeks monetary damages and declaratory relief. On December 28, 2020, Roberson filed a motion for preliminary injunction and temporary restraining order. (Doc. 11). Before addressing the motion, the Court must first conduct a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.

Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant

---

[1] In his list of defendants, Roberson lists "4 John Doe Correctional Officers." (Doc. 1, p. 2). Therefore, the Clerk of Court is **DIRECTED** to **ADD** John Does 2-4 to the docket as defendants.

who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* Complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). The Court must also consider whether any claims are improperly joined and subject to severance or dismissal. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

## THE COMPLAINT

Roberson alleges the following: On September 16, 2020, Correctional Officer Fenti came to Roberson's cell and informed Roberson that he had a call pass to go to mental health. (Doc. 1, p. 8). Fenti handcuffed Roberson behind his back and then inserted the key into the lock to unlock the cell door. (*Id.*). Because Fenti was taking "more time than necessary to open the cell door," Roberson asked, "why the hold up?" (*Id.* at p. 9). Fenti, who had been looking down the gallery, then yelled at Roberson to step to the back of the cell. Roberson complied with the order. The cell door opened, and two correctional officers, John Doe 1 and John Doe 2, forced an unknown struggling inmate into the cell. (*Id.* at pp. 9, 15). Fenti shut the cell door, with Roberson and the unknown inmate inside. (*Id.* at p. 9). Fenti opened the chuckhole door and removed the inmate's handcuffs. Once uncuffed, the inmate grabbed a milk carton, opened it, and tried to throw the contents at Fenti. Fenti directed Roberson to step forward to have his handcuffs also removed. The inmate stepped between Roberson and the cell door and told Roberson, "you aint giving them those cuffs." (*Id.*). Fenti and the inmate began yelling back and forth. (*Id.* at p. 10). The chuckhole door was opened, and Sergeant Susler aimed a canister of pepper spray at the inmate. The inmate threatened to beat Roberson if sprayed with mace. Despite the threat, Susler sprayed the inmate. The inmate then punched Roberson in the face, beat him in the back of the head, and held him in a chokehold. The correctional officers then began spraying mace on both Roberson and the inmate. (*Id.*). After being sprayed with mace, the inmate released Roberson from the chokehold and ran to

the sink to rinse his eyes. Roberson then went to the chuckhole door to be unhandcuffed, but Fenti would not remove Roberson's handcuffs. (*Id.* at p. 11). Fenti ordered the inmate to come to the chuckhole door for the handcuffs to be placed back on him, but the inmate refused. Fenti and the inmate began to argue again. Fenti then sprayed both Roberson and the inmate with mace, while taunting both inmates. Eventually, the inmate allowed himself to be handcuffed, and the cell door was opened. Roberson was taken to a bullpen in the North 2 healthcare unit where he stayed for several hours without being able to rinse his eyes or given medical attention. (*Id.*).

When two correctional officers, John Doe 3 and John Doe 4, came to escort Roberson back to his cell, they stated that they would show Roberson what they do to inmates who like to file grievances and lawsuits. (*Id.* at p. 12). The two correctional officers then dragged Roberson out of the bullpen. Roberson was placed in leg irons at Sergeant Jones's direction. Sergeant Jones, John Doe 3, and John Doe 4 then lifted Roberson up using the leg irons and handcuffs and began to carry him to his cell. After Roberson begged to be put down and allowed to walk, the officers allowed Roberson to walk the rest of the way back to his cell but continued to push and shove him along the way. When he returned to his cell, the mace had not been cleaned from the cell and still polluted the air. Roberson's property had been taken. (*Id.*).

## PRELIMINARY DISMISSAL

Roberson brings claims against Lieutenant John Doe for violating his Eighth Amendment rights. (Doc. 1, p. 14-15). Lieutenant John Doe, however, is not listed as a defendant in the case caption or the list of defendants. There are also no factual details in the statement of claim describing Lieutenant John Doe's involvement in the events that happened on September 16, 2020. To be held liable under Section 1983, a plaintiff must establish that a defendant was personally involved in the violation of his constitutional rights. Furthermore, the Court will not treat parties not listed in the case caption as defendants. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th

Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption").

Accordingly, any claims against Lieutenant John Doe are dismissed without prejudice.

## DISCUSSION

Based on the allegations of the Complaint, the Court finds it convenient to designate the following Counts:

> **Count 1:** Fourth Amendment claim against Susler and Fenti for the unlawful search and seizure of Roberson's property.
>
> **Count 2:** Fourteenth Amendment due process claim against Sulser and Fenti for depriving Roberson of his property.
>
> **Count 3:** Eighth Amendment cruel and unusual punishment claim against Sulser, Fenti, John Doe 1, and John Doe 2 for placing an aggressive inmate in the same cell as Roberson on September 16, 2020.
>
> **Count 4:** Eighth Amendment excessive force claim against Susler and Fenti for spraying Roberson with pepper spray on September 16, 2020.
>
> **Count 5**: First Amendment claim against John Doe 3 and John Doe 4 for retaliating against Roberson for filing grievances and lawsuits by exercising excessive force when taking Roberson back to his cell from the healthcare unit.
>
> **Count 6:** Eighth Amendment excessive force claim against Sergeant Jones, John Doe 3, and John Doe 4 for carrying Roberson by the leg irons and handcuffs and pushing and shoving him when taking him back to his cell from the healthcare unit.
>
> **Count 7:** Eighth Amendment conditions of confinement claim against Susler and Fenti for depriving Roberson of clothing, hygiene products, and a clean cell once he was returned to his cell from the healthcare unit.
>
> **Count 8:** Fourteenth Amendment due process claim against Sulser, Fenti, John Doe 1, and John Doe 2 for forcing another inmate in Roberson's cell without processing.
>
> **Count 9:** Fourteenth Amendment due process claim against Sulser and Fenti for placing another inmate in Robinson's cell on September 16, 2020, which is not designed to house two adults.
>
> **Count 10:** Fourteenth Amendment due process claim against Susler and Fenti for denying Roberson access to hygiene products for two weeks

while he was held in the segregation unit.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

### Counts 1 and 2

Roberson claims that under the supervision of Susler and Fenti, "unsupervised inmate trustees" searched and seized his property and items went missing, including legal documents, medical records, hygiene products, and pictures. (Doc. 1, p. 13). He asserts that Susler and Fenti violated the Fourth Amendment by searching and seizing his property simply to harass him. However, a prisoner has no reasonable expectation of privacy in his cell under the Fourth Amendment while incarcerated. *See Henry v. Hulett,* 969 F. 3d 769, 777 (7th Cir. 2020) ("Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." (quoting *Hudson v. Palmer*, 468 U.S. 517, 526 (1984))). Therefore, Count 1 is dismissed.

Roberson also does not have a due process claim against Sulser and Fenti for the deprivation of his property. (Doc. 1, p. 16). The Seventh Circuit has specifically held that an IDOC prisoner has an adequate post-deprivation remedy for confiscation of a prisoner's non-contraband property by IDOC personnel in the form of an action for damages in the Illinois Court of Claims. *See Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999) (citing 705 ILCS 505/8); *Stewart v. McGinnis*, 5 F.3d 1031, 1035-36 (7th Cir. 1993). Thus, Roberson has an adequate post-deprivation remedy for the loss of his property in state court, and Count 2 will be dismissed without

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (7th Cir. 2007).

prejudice.

### Count 3

The Eighth Amendment prohibits the wanton and unnecessary infliction of pain upon prisoners and imposes a duty on officers "to protect prisoners from violence at the hands of other prisoners." *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). Roberson claims that Sulser and Fenti placed a struggling and aggressive inmate in his cell for no reason resulting in him being physically assaulted by the inmate with the correctional officers present. These claims are sufficient for Count 3 to proceed past screening.

### Count 4

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under Section 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). To establish an excessive force claim, the plaintiff must plead that an assault occurred and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). Roberson's allegations that Sulser and Fenti sprayed Roberson with mace even though he was handcuffed, compliant with their orders, and being attacked by the other inmate are sufficient for Count 4 to survive preliminary review.

### Count 5

Roberson claims that prior to being dragged from the bullpen area in the healthcare unit, carried by his handcuffs and leg irons, and pushed and shoved while being escorted back to his cell, Correctional Officers John Doe 3 and John Doe 4 told Roberson that they would "show you what we do to niggers that like to file grievances and lawsuits." (Doc. 1, p. 12). This is sufficient

for Count 5 to survive screening. *See Bridges v. Gilbert,* 557 F.3d 541, 546 (7th Cir. 2009) (listing the elements of a retaliation claim).

### Count 6

As discussed, correctional officers violate the Eighth Amendment when they use excessive force against an inmate without penological justification. Therefore, Roberson's claims that he was dragged from the bullpen area, carried by his handcuffs and leg irons, and pushed and shoved while being escorted back to his cell from the healthcare unit is sufficient at this stage for Count 6 to proceed as to Sergeant Jones, John Doe 3, and John Doe 4. *See Rice ex rel. Rice v. Corr. Med. Serv.*, 675 F.3d 650, 667 (7th Cir. 2012) (stating that the use of force is excessive when it involves the "unnecessary and wanton infliction of pain").

### Count 7

Two elements are required to establish a constitutional violation for conditions of confinement. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer*, 511 U.S. at 834. The second requirement is a subjective element—establishing a defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Id.* at 842.

Roberson claims that when he was returned to his cell from the healthcare unit by John Doe 3 and John Doe 4 the cell had not been cleaned and was still covered in pepper spray. Roberson has asthma, and the pepper spray polluted the air making it difficult for him to breath. He also no longer had clothing or bedding and was denied clean clothing and sanitation and hygiene items for two weeks. (Doc. 1, pp. 15, 16). While Roberson discusses the conditions of the cell that he believes are unconstitutional, he does not include in the Complaint any supporting facts regarding the state of mind of Sulser or Fenti. He does not allege that Sulser and Fenti had knowledge of the

conditions of the cell and then disregarded a risk of harm to him resulting from those conditions. Roberson only states that Sulser and Fenti violated his right to be free from cruel and unusual punishment by depriving him of basic human needs. (*Id.* at p. 15). Because legal conclusions are not sufficient to state a claim for relief, Roberson has failed to plea the subjective element necessary for an unconstitutional conditions of confinement claim, and Count 7 is dismissed. *See Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009) (pleadings that are "no more than conclusions, are not entitled to the assumption of truth").

**Counts 8 and 9**

Roberson claims that his Fourteenth Amendment due process rights were violated when Sulser, Fenti, John Doe 1, and John Doe 2 forced another inmate into his cell without proper processing. "But the law does not recognize a liberty or property interest in a prisoner's cell assignment." *Owens v. Funk,* 760 F. App'x 439, 443 (7th Cir. 2019). *See also Sousa v. Anglin,* 481 F. App'x 265, 267 (7th Cir. 2012) (holding that plaintiff did not have a liberty interest in being housed in a certain prison). Therefore, process is not required prior to prison officials transferring inmates within a correctional facility, and Count 8 is dismissed. *See Townsend v. Fuchs,* 522 F. 3d 765, 771 (7th Cir. 2008).

Roberson also states that his due process rights were violated when Susler and Fenti forced the inmate in his cell because the cell was "deemed unconstitutionally fit to house 2 adults." (Doc. 1, p. 16). As discussed, Roberson does not have a liberty interest in his cell assignment that requires process of law prior to any modifications or transfers. He also does not have a liberty interest in the size of his cell. *Hurst v. Snyder,* 63 F. App'x 240, 241 (7th Cir. 2003). Therefore, to the extent that Roberson is arguing that he was doubled celled in violation of his due process rights, Count 9 is dismissed.

If Roberson is attempting to argue that by being doubled celled in a small cell, he was

subjected to unconstitutional conditions of confinement in violation of the Eighth Amendment, this claim also fails. The practice of housing two inmates in a prison cell designed for one, known as "double celling," is not *per se* unconstitutional. *French v. Owens*, 777 F. 2d 1250, 1252 (7th Cir. 1985) (citing *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)). Conditions of confinement claims require a plaintiff to plead that the conditions denied him "the minimal civilized measure of life's necessities." *Farmer,* 511 U.S. at 834. Although Roberson was attacked by the other inmate placed in his cell, he has not connected the small living conditions to any constitutional deprivations. *See Crenshaw v. Baldwin,* 17-cv-637-NJR, 2017 WL 3189500, at *5 (S.D. Ill. July 27, 2017) (dismissing a claim because it was grounded in the assertion that the size of the cell alone violated constitutional standards). For these reasons any Eighth Amendment claim regarding his small cell size is also dismissed.

**Count 10**

Roberson alleges that once he returned to his cell from the healthcare unit, he was denied hygiene products, such as soap, toothbrush, toothpaste, and clean clothes, for a period of approximately fourteen days in violation of his Fourteenth Amendment due process rights. (Doc. 1, p. 16).

"Prisoners generally do not have a liberty interest in avoiding brief periods of segregation, whether administrative or disciplinary." *Smith v. Akpore*, 689 F. App'x 458, 460 (7th Cir. 2017) (citations omitted). Segregation under certain conditions, however, may still constitute a deprivation of a liberty interest if the placement segregation imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Mathews v. Brown*, 768 F. App'x 537, 540 (7th Cir. 2019). When considering a due process claim for placement in segregation, the Court is to consider "the duration and conditions of the confinement." *Mathews*, 768 F. App'x at 540.

While it is not clear how long Roberson was housed in segregation, Roberson only complains about the fourteen day period when he was denied hygiene items without due process. This time span is not so long of a duration as to rise to the level of an atypical and significant hardship, implicating a liberty interest. Therefore, Count 10 is dismissed. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698 (7th Cir. 2009) (noting that the Seventh Circuit has "routinely affirmed dismissal without requiring a factual inquiry into the conditions of confinement" when the term served in segregation is short); *Obriecht v. Raemisch*, 565 F. App'x 535, 539-40 (7th Cir. 2014) (ruling that seventy-eight days in "deplorable conditions" did not implicate a liberty interest, but that plaintiff might have challenged the conditions of confinement while in segregation); *Lekas v. Briley,* 405 F. 3d 602, 612 (7th Cir. 2005) (finding that ninety days in segregation with no access to prison programs, reduction in visits and phone calls, and limitation on personal items did not amount to an atypical and significant hardship).

## PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

In the Motion for Preliminary Injunction and Temporary Restraining Order, Roberson alleges that after filing this lawsuit he has been subjected to retaliation. He is receiving cold, poisonous, and innutritious meals. (Doc. 11, p. 8). Some meals have been contaminated with roaches, disinfectant, and medication. The food has caused him to become ill, and he experiences stomach pains, vomiting, diarrhea, and nausea. Medical staff refuses to provide medical attention for his symptoms. Prison staff turn off the water supply to his cell for weeks at a time. At times, the water has been shut off for so long that the waste in the toilet builds up, and Roberson is forced to go to the bathroom in milk cartons and styrofoam trays. (*Id.*). On December 20, 2020, Roberson requested grievance forms from Correctional Officer Fenti who refused his request. (*Id.* at p. 9). Fenti then called over the radio for Correctional Officer Brown to come and break Roberson's arm. Brown arrived at the cell and dislocated Roberson's shoulder. Roberson was then denied medical

treatment, and Fenti threatened to continue to give Roberson "hell." The following two days, Fenti refused to feed Roberson lunch. Roberson asks the Court to enter an order prohibiting prison staff from retaliating against him, serving him cold and innutritious food, refusing him healthcare services, and abusing authority. (*Id.* at p. 2). He claims that prison staff will continue to violate his constitutional rights if the Court does not intervene. (*Id.* at p. 5).

In order to obtain relief, whether through a temporary restraining order ("TRO") or a preliminary injunction, Roberson must demonstrate that: (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) he will suffer irreparable harm without the injunction. *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Additionally, "a preliminary injunction is appropriate only if it seeks relief of the same character sought in the underlying suit, and deals with a matter presented in that underlying suit." *Daniels v. Dumsdorff*, No. 19-cv-00394, 2019 WL 3322344 at *1 (S.D. Ill. July 24, 2019) (quoting *Hallows v. Madison Cty. Jail*, No. 18-cv-881-JPG, 2018 WL 2118082, at *6 (S.D. Ill. May 8, 2018) (internal citations omitted)). *See also Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *Bird v. Barr,* 19-cv-1581 (KBJ), 2020 WL 4219784, at *2 (D.C. Cir. July 23, 2020) (noting that a court "only possesses the power to afford preliminary injunctive relief that is related to the claims at issue in the litigation").

Here, Roberson does not seek relief related to the allegations in his case. Roberson is proceeding on claims relating to an incident that occurred on September 16, 2020, when correctional officers failed to protect him from an aggressive inmate and then used excessive force against him. Roberson now requests for the Court to issue a TRO or preliminary injunction based on new allegations of retaliation, which have occurred since filing the Complaint. These new

claims are asserted against Defendant Fenti, but also against individuals who are not party to this case. A motion for a TRO or preliminary injunction is not a proper avenue for Roberson to add claims and individuals to this lawsuit. Accordingly, because the request for a TRO and preliminary injunction pertain to recent events that are outside the scope of the Complaint, the Motion is denied without prejudice.

### IDENTIFICATION OF UNKNOWN DEFENDANT

Roberson will be allowed to proceed with Count 3 against John Does 1 and 2 and Counts 5 and 6 against John Does 3 and 4, but these defendants must be identified with particularity before service of the Complaint can be made. Roberson will have the opportunity to engage in limited discovery to ascertain the identity of this individual. *Rodriquez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). The Warden of Menard, Anthony Wills, will be added to the docket in his official capacity only and shall be responsible for responding to discovery aimed at identifying the unknown defendants. Guidelines and dates will be set for identifying the John Does once Defendants have filed their Answers to the Complaint. After the names of the John Does are discovered, Roberson shall file a motion to substitute the newly identified defendants in place of the generic designations in the case caption and throughout the Complaint.

### DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 3** will proceed against Sulser, Fenti, John Doe 1, and John Doe 2, **COUNT 4** will proceed against Sulser and Fenti, **COUNT 5** will proceed against John Doe 3 and John Doe 4, and **COUNT 6** will proceed against Sergeant Jones, John Doe 3, and John Doe 4. **COUNTS 1, 2, 7, 8, 9**, and **10** are **DISMISSED without prejudice**.

The Clerk of Court is **DIRECTED** to **ADD** the Warden of Menard Correctional Center, Anthony Wills, as a defendant in his official capacity only, for the purpose of responding to any

discovery aimed at identifying the John Doe Defendants. The Clerk is further **DIRECTED** to correct the docket in accordance with footnote one.

The Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 11) is **DENIED without prejudice**.

The Clerk of Court **SHALL** prepare for Fenti, Susler, Jones, John Does 1-4 (once identified) and Anthony Wills (official capacity only) the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Roberson. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Roberson, the employer shall furnish the Clerk with that defendant's current work address, or, if not known, his or her last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on the John Does such time as Roberson has identified them by name in a properly filed motion for substitution. Roberson is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals. Further instructions on identifying the John Does will be provided in a separate order.

With the exception of Wills, Defendants are **ORDERED** to file an appropriate responsive

pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.** Because Anthony Wills is only in the case for purposes of identifying the John Does, he does not need to file an Answer.

If judgment is rendered against Roberson, and the judgment includes the payment of costs under Section 1915, Roberson will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Roberson is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   December 30, 2020**

　　　　　　　　　　　　　　　　　　　　　　　　　　　  *s/ Stephen P. McGlynn*
　　　　　　　　　　　　　　　　　　　　　　　　　　　**STEPHEN P. MCGLYNN**
　　　　　　　　　　　　　　　　　　　　　　　　　　　**United States District Judge**

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Roberson is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Roberson need not submit any evidence to the Court at his time, unless otherwise directed by the Court.